JAMES C. PALMER *v.* STATE OF
MARYLAND

[No. 162, September Term, 1968.]

692

*Decided January 22, 1969.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Karl H. Goodman* for appellant.

*Dickee M. Howard, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *C. Allan Herndon, Jr., Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The questions presented on this appeal involve the application of the rules of law enunciated or construed in *United States v. Wade,* 388 U. S. 218, *Gilbert v. State of California,* 388 U. S. 263 and *Stovall v. Denno,* 388 U. S. 293, to the admission of evidence with respect to the identification of the appellant. The appellant was charged with the crime of robbery with a deadly weapon in each of two indictments, the indictments were tried together by the court in the Criminal Court of Baltimore, he was convicted of the offense under each indictment and a 20 year sentence was imposed on each conviction, the sentences to run consecutively.

The basic principle enunciated in *Wade* is that a lineup is a critical stage of the prosecution at which the accused is as much entitled to aid of counsel as at the trial itself. 388 U. S. 236. The Court in *Wade* and in *Gilbert* then went on to "fashion exclusionary rules to deter law enforcement authorities from exhibiting an accused to witnesses before trial for identification purposes without notice to and in the absence of counsel." *Stovall* at 297. As we understand *Wade, Gilbert* and *Stovall,* when a post-indictment lineup is conducted for identification purposes without notice to and in the absence of the accused's appointed counsel:[1]

> 1) The in-court identifications of the accused by witnesses who viewed such lineup are to be excluded unless the prosecution establishes "by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identifications," that is that they had an "independent source."[2] *Wade* at 240 and 242.

---

1. The Court indicated that there may be an "intelligent waiver" of the right to counsel. *Wade* at 237, citing *Carnley v. Cochran,* 369 U. S. 506.

2. In *Wade,* at 241, the Court stated the test:

"We think it follows that the proper test to be applied in these situations is that quoted in *Wong Sun v. United States,* 371 U. S. 471, 488, 'Whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt 221 (1959). See also *Hoffa v. United States,* 385 U. S. 293, 309. Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup."

2) Evidence that witnesses identified the accused at such lineup is *per se* to be excluded. *Gilbert* at 272-274.[3]

3) The admission of evidence, to be excluded under 1) and 2) is prejudicial error unless, in any event, its introduction was harmless error beyond a reasonable doubt, applying *Chapman v. State of California,* 386 U. S. 18. *Wade* at 242; *Gilbert* at 274.

4) "*Wade* and *Gilbert* affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after (12 June 1967)." *Stovall* at 296.[4]

5) Independent of any right to counsel claim, a confrontation may be "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to be a denial of due process of law. "However, a claimed violation of due process of law in the conduct of a

---

**3.** In *Gilbert* three eyewitnesses who had viewed the illegal lineup made in-court identifications at the guilt stage. Another witness, the manager of an apartment house in which incriminating evidence was found and in which the accused allegedly resided identified the accused in the courtroom and testified in substance as to her prior lineup identification at the guilt stage. At the penalty stage, eight witnesses testified they identified the accused at the lineup with regard to crimes other than the ones for which he was then on trial. It appears that there were separate guilt and penalty stages of the trial before the same jury, which rendered a guilty verdict and imposed the death penalty.

In *Wade* there were only in-court identifications at the trial. The admissibility of the lineup identification itself was not involved.

**4.** The rationale of *Wade* with regard to the admission of the in-court identification after illegal lineup was that a *per se* rule of exclusion of the courtroom identification would be unjustified and that a rule limited solely to the exclusion of testimony concerning the lineup itself would render the right to counsel an empty one. *Wade* at 240.

The rationale of *Gilbert* with regard to the admission of evidence as to the identification at the illegal lineup itself was that such testimony was "the direct result of the illegal lineup 'come at by exploitation of [the primary] illegality.' The State is therefore not entitled to show that testimony had an independent source." *Gilbert* at 272-273, citing *Wong Sun v. United States,* 371 U. S. 471.

confrontation depends on the totality of the circumstances surrounding it * * *." *Stovall* at 301-302.

The precise holdings in *Wade* and *Gilbert* apply only to a post-indictment lineup conducted for identification purposes without notice to and in the absence of the accused's appointed counsel. See *Tender v. State,* 2 Md. App. 692. But the Court said in *Wade* at 227:

> "In sum, the principle of *Powell v. Alabama* (287 U. S. 45) and succeeding cases requires that we scrutinize *any* pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself. It calls upon us to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice."

And it stated, *Wade* at 229:

> "The pretrial confrontation for purposes of identification may take the form of a lineup, also known as an 'identification parade' or 'showup' * * * or presentation of the suspect alone to the witness * * *. It is obvious that risks of suggestion attend either form of confrontation and increase the dangers inhering in eyewitness identification." [5]

---

5. We considered *Wade* at length in *Tyler v. State,* 5 Md. App. 265. We thought it evident "that *Wade* does not hold that all pretrial confrontations between the accused and the victim or other identifying witnesses are thereby deemed to be critical stages of the criminal prosecution. In our opinion, *Wade* indicates that only those pretrial confrontations that are not subject to fair and meaningful objective review later at the trial fall within its strictures, so that where the circumstances of the confrontation can be fully developed at the trial by cross-examination of the State's witnesses, or by presentation of witnesses on behalf of the defendant, the right to counsel does not attach." at 272.

We think it necessarily follows that the rules of *Wade* and *Gilbert* apply also to a lineup conducted before indictment and to other pretrial confrontations within the meaning of *Tyler*. We again note that in *Stovall,* at 300, the Court said that *Wade* and *Gilbert* affect "* * * all future cases *which involve confrontations for identification purposes* conducted in the absence of counsel * * *." (emphasis supplied). It did not limit their affect to "post-indictment lineups." And we think also that *Wade* and *Gilbert* contemplate that if an accused is to be so confronted by identifying witnesses before his trial and is not represented by counsel and cannot afford to employ counsel,[6] counsel must be provided for him unless he intelligently waives the right. Although in *Wade* and *Gilbert* counsel had already been appointed and no argument was made in either case that notice to counsel would have prejudicially delayed the confrontations, the Court appeared to recognize that in some circumstances notice to and the presence of the accused's own counsel would result in prejudicial delay. *Wade* at 237. And even though the Court did not specifically so state, we think it logically follows that where counsel had not been already appointed, the time necessary to have counsel appointed and assure his presence would, in some circumstances, result in delay prejudicial to the prosecution. But the Court expressly left open the question "whether the presence of substitute counsel might not suffice where notification and presence of the suspect's own counsel would result in prejudicial delay," noting (note 27 at 237) : "Although the right to counsel usually means a right to the suspect's own counsel, provision for substitute counsel may be justified on the ground that the substitute counsel's presence may eliminate the hazards which render a lineup a critical stage for the presence of the suspect's *own* counsel."

In the instant case there was an in-court identification of the appellant at the guilt stage of the trial by each of the robbery victims. One of the victims, David Watson, had previously identified the appellant at a confrontation in the courtroom at the

---

6. We think that if an accused, understanding his right to counsel, is shown to have the means to employ counsel, his failure to obtain counsel after being given the opportunity to do so would be a valid waiver.

Western Police Station. The other victim, Sidney Lipman, had previously identified the appellant at a lineup at Central Police Headquarters. Both the confrontation at Western and the lineup were after 12 June 1967 but were before the appellant was indicted. Prior to trial the appellant filed a motion to suppress evidence. He moved that "any evidence obtained by the State in consequence of the lineup in which he appeared following his arrest be suppressed as said evidence was obtained in violation of his rights guaranteed by the Sixth Amendment of the United States Constitution." He alleged as reasons that he had not been advised of his right to private or appointed counsel for representation during the lineup and that he was not represented by counsel thereat. When the cases came up for trial defense counsel brought to the court's attention that the motion had been filed. The State said that its first witness, Watson, had not attended the lineup so that the motion was not addressed to the case in which he was involved. The court said that it would take Watson's testimony and "Since it is a court trial, if we find that your allegations in this motion are such as would place it within the purview of United States versus Wade, we will exclude it from the record and from our consideration of the evidence in conformity with your request and motion. So we will defer on the actual ruling on this motion at this time * * *." As Watson began his testimony defense counsel said to the court that although Watson had not attended a lineup he had confronted the appellant who "was just hustled into the courtroom, and Mr. Watson was brought in moments later." Watson at that time identified the appellant. Counsel claimed "This certainly would be even worse" than an identification at a lineup. The court said that this would have to be developed on cross-examination and it would have to decide whether it went to the weight or to the motion to suppress at that time. During the course of his testimony, Watson identified the appellant as the man who had robbed him. Timely objection was made and overruled. Thereafter it was brought out by the State that the witness had gone to the Western Police Station at the request of the police. A Lieutenant Etheridge "explained what was going to happen. I sat there in the courtroom, and he said he was going to bring some people in * * * Some people for

a hearing, and he said if I recognized anybody, that did anything * * * to me or anyone else, that I should pick him out * * * Well, I was in the courtroom and after approximately five or ten minutes, they brought the defendant in, and that's when I picked him out." The appellant was brought in by himself; no other people had been brought in—"he was the first case." Watson was seated in the rear of the courtroom in the company of an Officer Sullivan. "I had orders that if I recognized him, I was to stand up and say, 'that's the man.'" When the appellant was brought in "I picked the man out. I stood up and said, 'Lieutenant, that's the man.'" He had been told that "it was a possibility that they may have had the fellow that hurt me." Watson was asked by the State, "Did you subsequently give any testimony and make this identification at that time?" He replied, "They had to draw up a case in order for me to press charges and stuff like that at the station, sir." Defense counsel moved that the in-court identification and the testimony as to the identification at the police station be stricken from the record. The motion was denied.

On appeal the appellant contends that he was denied the right to counsel at the confrontation and that the admissions of the identifications were constitutional error. We think it clear that the appellant was not represented by counsel at the challenged confrontation. We held in *Tyler v. State, supra,* at 270, that nothing in *Wade* or *Gilbert* guarantees the right to counsel at a preliminary hearing whether or not an identification of the accused is made. We said that "The rationale of *Wade* and *Gilbert* is not applicable to confrontations at a pretrial judicial hearing presided over * * * by a judicial officer * * *." The States assumes that the confrontation was during a preliminary hearing. Insofar as it appears from the record before us, we find it clearly evident that it was not. And we think that the confrontation here was such as not to be subject to fair and meaningful objective review later at the trial and, therefore, as we indicated in *Tyler,* at 272, fell within the strictures of *Wade.* Thus, since the appellant was not represented by counsel thereat, it was an illegal confrontation. As such, evidence on examination by the State that the witness identified the appellant at the confrontation was not properly admissible, the *per se* ex-

clusionary rule of *Gilbert* being applicable. And, on the record before us, we are not "able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California, supra.*[7] We find the admission of the evidence of the identification of the appellant at the confrontation to be prejudicial error and, even though it involves only one indictment, we are compelled on the particular facts of this case to reverse the judgments under both indictments as they were tried together and it cannot be ascertained what consideration the trier of fact gave to the inadmissible evidence in reaching its verdicts of guilty.[8] Thus the question whether the in-court identification by Watson had an independent source is not reached.

By our holding it is not necessary to consider the admissibility of the in-court identification by Lipman, the victim of the other robbery, and the admissibility of the evidence as to his identification of the appellant at the lineup. However, we feel it advisable to discuss these questions, in any event, for the guidance of the lower court. The appellant contends that he was denied his right to counsel and that the identification evidence was improperly admitted.

When Lipman was called by the State, defense counsel brought to the court's attention that the motion to suppress was involved. The court said it would delay its ruling until "we have seen what developed in the interrogation relative to the lineup." After Lipman testified as to the facts of the robbery, and made an in-court identification of the appellant as the robber, the State elicited from him that he had attended a lineup at Central Police Station at which he identified the appellant. Officer John Carter testified for the State that he was present at the lineup and that the appellant was advised of his rights "about the lineup." He said that Lt. Clarence Etheridge advised the appellant that he had a right to an attorney and that he was to appear in a lineup. The appellant "told us that he had changed counsel but that for some reason or another his counsel did not

---

7. See the discussion of the admissibility of prior extra-judicial identifications in Gilbert, note 3, page 272.

8. The Lipman robbery was committed on 17 November 1967 and the Watson robbery on 22 November 1967. See *Gordon v. State,* 5 Md. App. 291; *Gorski v. State,* 1 Md. App. 200.

show up at the lineup." The officer was asked, "Was any time given for him to wait for counsel?" and replied, "Correct, sir." The officer was asked, "At that time did he express any opinion about waiting for counsel?" and the answer was, "No, he gave a verbal objection. After Mr. Gerald Klauber who was representing someone else, he was asked to act instead of the lawyer whom he stated that he had changed." Gerald Klauber, an attorney, called by the State, testified that he was present at the lineup as the attorney for another suspect who was in the lineup. He was asked, "Did you subsequently undertake to represent on a temporary basis, the defendant in this case, Mr. Palmer?" He replied, "No, I did not." He was sure the appellant did not see him at the lineup "because of the way it was set up, the suspects could not see through the screen." He spoke to the appellant after the lineup and delivered a message for him to a woman, whose name he did not remember, that the appellant was in jail and "wanted somebody to see him." The appellant then testified on the issue of the lineup. He denied that he was advised that he had the right to an attorney or that one would be appointed for him. While he was held at the Western Police Station before the lineup (the lineup was conducted two days after his arrest) he did not ask for a lawyer "because I didn't have any funds * * * I wasn't too versed with the law, sir." He said he asked for an attorney when he was told he was to appear in a lineup—"I told them that I didn't have any * * * The officer (Carter) told me just to get in the lineup." Asked if "during the lineup and prior to the lineup, were you advised of your rights to counsel to represent you, during the course of the lineup?", he replied, "I wasn't advised of anything." He said Mr. Klauber did not talk with him before the lineup, he did not consider him as his attorney and did not discuss the case with him. Officer Carter, in rebuttal, denied that the appellant had asked, prior to the lineup, that an attorney be appointed for him. The court denied the motion to suppress. It said it chose to believe the officer that the appellant was advised "of his rights" prior to the lineup and that both Watson and Lipman seemed to have a conscious independent identification of the defendant." But this does not answer the question posed by the admission of the evidence as to the identi-

fication of the appellant by Lipman at the lineup. We think it obvious that the court did not find that the appellant was represented by counsel at the lineup and we feel that the record shows that he was not. Even if we were to resolve the question as to substitute counsel left open in *Wade* by determining that such substitution may, in proper circumstances, be justified, we do not think that the record here shows that provision was made for such substitute counsel as may be contemplated by *Wade*, especially in the face of the denial by the attorney that he represented the appellant at the lineup. Nor was there any showing, it being apparent that the appellant had no counsel, that the obtaining of counsel would have prejudicially delayed the confrontation, which *Wade* indicates would be a prerequisite to the substitution of counsel. Although the lower court did not so expressly state, it implied that advising the appellant that he had a right to have counsel present at the lineup was sufficient. However, the right to furnish counsel does not depend upon request, and the mere informing an accused of the right to counsel is not enough. Even if it be assumed that the appellant was properly informed that he had a right to the presence of counsel at the lineup and that if he had no funds to employ counsel, counsel would be appointed for him, the court made no determination that the appellant waived that constitutional right. *Carnley v. Cochran, supra,* stated that the principles declared in *Johnson v. Zerbst,* 304 U. S. 458, were equally applicable to asserted waivers of the right to counsel in state criminal proceedings. *Johnson v. Zerbst,* held that it was the responsibility of the trial court to determine whether there was an intelligent, understanding and competent waiver by the accused of his right to counsel. "While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and proper and appropriate for that determination to appear upon the record." 304 U. S. 465. The record here does not show a waiver. On the contrary, the testimony of the officer whom the court found to be credible, was that the appellant objected to proceeding with the lineup without waiting for counsel. The police recognized this objection for it was then, believing the testimony of the officer, that they attempted to have Mr. Klauber represent the

appellant. As counsel was not present at the lineup and as the presence of counsel was not waived, the lineup was illegal. As the lineup was illegal, the *per se* exclusionary rule precluded the admission of the evidence with regard to the identification of the appellant at the lineup.[9] The admission of that evidence, therefore, was constitutional error, and we find it to be prejudicial error for, like the admission of the extra-judicial identification of Watson, we are not "able to declare a belief that it was harmless beyond a reasonable doubt."

As with Watson's in-court identification, we do not reach the question of the admissibility of Lipman's in-court identification. As we have seen, it would be admissible if the State established by clear and convincing evidence that it was based upon observations of the suspect other than the lineup identification. The lower court, in overruling the motion to suppress said that Watson and Lipman "seemed to have a conscious independent identification of the defendant." But it does not appear that it applied the test for exclusion of an in-court identification declared to be proper by *Wade*. (see note 2 herein). We cannot determine from the record before us whether the in-court identifications had an independent origin sufficient to permit their admission, and were the question necessary for disposition of the instant case, we would remand for further proceedings with regard thereto, as that inquiry is most properly made in the lower court.

The appellant also contends that the circumstances of his confrontation by Watson in the Western Police Station were such as to deny him due process of law. As we have reversed the judgment to which that matter was pertinent for other reasons, we do not consider that contention.

> *As to each of indictments Nos. 33 and 35:*
> *Judgment reversed and case remanded for a new trial.*

9. We cannot find from the record that the evidence of the lineup identification was received only on the issue of admissibility of the in-court identification. We think it was admitted on the issue of innocence or guilt.