Charles L. MOORE, Petitioner,

v.

R. M. OLIVER, Superintendent Virginia
State Farm, Respondent.

Civ. A. No. 72-C-16-D.

United States District Court,
W. D. Virginia,
Danville Division.

Sept. 13, 1972.

Charles L. Moore, pro se.

Burnett Miller, III, Asst. Atty. Gen., Richmond, Va., for respondent.

WIDENER, Chief Judge.

Petitioner was convicted of breaking and entering and grand larceny, on February 17, 1971, in the Corporation Court of the City of Martinsville. The jury sentenced him to five years on each count.

His petition for habeas corpus states the following grounds for relief:

(1) Illegal arrest

(2) Illegal interrogation

(3) Illegal identification

(4) Trial court erred

(5) Incompetent, inadequate and ineffective counsel

(6) Illegal search and seizure

In a statement attached to the petition, petitioner has explained his grounds to some extent, and it appears that the essence of each allegation is as follows:

(1) Illegal arrest. Petitioner explains this allegation to mean that the City police officers were outside the city limits at the time of his arrest.

(2) Illegal interrogation. Petitioner alleges here that he was interrogated without the assistance of a lawyer, that he asked for a lawyer, and was interrogated anyway.

(3) Illegal identification. Petitioner says that his constitutional rights were violated when the trial court allowed witnesses to identify him in court, when those witnesses had previously identified him at the police station when he did not have counsel. This was not a lineup identification. On the night of the arrest, several people came to the police station and viewed petitioner, and said that he was the man driving the car.

(4) Trial court erred. This is a catch-all allegation stating basically that petitioner received a sham trial. He specifically states that his rights were violated when the court allowed the indictment to be amended immediately before trial and when he was allowed to be tried in prison clothes.

(5) Incompetent, inadequate and ineffective counsel. This ground is not separately explained in detail, but it appears that petitioner thinks that his lawyer should have spent more time with him before the trial, that he should have cited more law in his motions, that he should have asked for a continuance and that he should have gotten an acquittal.

(6) Illegal search and seizure. Petitioner objects to the fact that his whiskey bottle and the keys to the vehicle were taken from him when he was picked up by the police.

The convictions in the Corporation Court for the City of Martinsville were appealed to the Supreme Court of Virginia which denied the petition for writ of error on September 1, 1971. The petition alleged that the trial court erred in allowing the indictment to be amended immediately prior to trial, in allowing

admission of identification testimony when such testimony was allegedly tainted by an out of court identification in which petitioner was not represented by counsel, and in refusing to set aside the verdict as contrary to the law and evidence.

Petitioner also filed a petition for a writ of habeas corpus in the Corporation Court for the City of Martinsville, which court denied the writ on August 3, 1971. Petitioner filed another petition for writ of habeas corpus in the Supreme Court of Virginia which denied the writ on January 17, 1972. In those petitions, which were basically the same, petitioner raised the following grounds for relief: Illegal arrest; Illegal identification; Illegal interrogation; Incompetent, inadequate and ineffective counsel; and Illegal amendment of the indictment.

■ It can be seen from a review of the petitions filed before the Supreme Court of Virginia that that court has yet to have the opportunity to pass on two of the grounds that petitioner urges here for relief. Petitioner has not exhausted his remedies concerning his claim of illegal search and seizure and the constitutionality of being tried in prison clothes. Therefore, those grounds will not be considered here. 28 U.S.C. § 2254.

■■ Petitioner claims that his arrest was illegal because city police arrested him outside the city limits. The power of a policeman to make an arrest by virtue of his office is subject to well recognized territorial limits in Virginia. He can act only within his city or within one mile of its corporate limits. Alexandria v. McClary, 167 Va. 199, 188 S.E. 158 (1936); Banks v. Bradley, 192 Va. 598, 66 S.E.2d 526 (1951); Va.Code § 15.1–141 (1964 Repl.Vol.). If he acts outside the one mile area from the city limits, his status is that of any other private citizen. Alexandria v. McClary, 167 Va. 199, 203, 188 S.E. 158 (1936). It is not clear from the record exactly when petitioner was arrested. Petition-

er was approached by city policemen and told that he fit the description of the man who was driving the vehicle which was stolen and asked to come up town "to straighten this out." Petitioner agreed to go. The police testified that petitioner was placed under arrest at the police station. Petitioner says that they arrested him when he was picked up. He was therefore arrested at some point between the J. C. Wooldridge parking lot, where he was picked up, and the police station. The court takes judicial notice of the fact that the parking lot where the defendant was picked up is, as shown by a map supplied by the Department of Highways of the State of Virginia, within one mile of the city limits of Martinsville.

■ The question of where petitioner was arrested is of little significance because, even if the officers were more than one mile outside the city limits when they arrested petitioner, they had the authority that any other private citizen would have had. It is well recognized at common law that a private person may arrest without a warrant in a felony case if the felony has actually been committed and he has reasonable grounds for believing that the person arrested was the one who committed it. Commonwealth ex rel. Garrison v. Burke, 378 Pa. 344, 106 A.2d 587 (1954); 133 A.L.R. 608, 613. Here, the felony had been committed and probable cause was clearly present. Petitioner was seen by the police near the spot where the stolen vehicle had slid off the road; he was seen there shortly after the vehicle had been reported stolen; the interior of the car had blood on it, and petitioner had a fresh cut on his finger. There is no merit to petitioner's claim of illegal arrest.

Petitioner claims that his constitutional rights were violated when the trial court allowed two witnesses to identify him at the trial when those witnesses had previously identified him at the police station at a time when petitioner was not represented by counsel. It appears from the transcript that a

couple of hours after petitioner's arrest, one Billy Turner was asked to come to the police station to identify petitioner. Turner lives near the place where the car which petitioner was driving slid off the road. Turner was on the way to church when he observed the accident. He stopped his vehicle and went up to petitioner and asked if he was hurt. He spoke with petitioner briefly and, upon ascertaining that the accident was not serious, went on to church. Later that night, the police came to Turner's house and they all went back to the police station, where Turner observed petitioner and identified him as the man who was driving the vehicle. Mr. Turner describes the events as follows:

"Q. What did they tell you before you went in to see Mr. Moore?

"A. They come to my house and knocked on my door and I asked them to come on in, and I went back in the bedroom and put my clothes on and all and I come on up here, with them, and they said they think that had the man from where had stole the car from Piedmont Dodge.

"Q. They just didn't ask you to identify the man they told you they thought they had the man—

"A. They thought they had the man—

"Q. Did that have any influence on your identification?

"Q. None whatsoever, no matter where you'd seen this man?

"A. Yeah, I could identify him."

Petitioner was also identified that night by David Cressel, who also identified him in court. Cressel is employed at a food store which is located near the place where the car which petitioner was driving slid off the road. Petitioner walked into the store and asked Cressel to call a wrecker for him. Cressel did not do so but instead referred petitioner to a nearby gas station. The exact details of the identification by Cressel at the police station are not in the record, although it is clear that both identifications, Turner's and Cressel's, were one on one, that is, petitioner was alone when each identified him (there was no lineup) and petitioner had not yet been indicted. Also, it should be noted that about thirty minutes prior to the identification a warrant was issued against petitioner. In Virginia, if a person is arrested without a warrant, the arresting officers take the person to one authorized to issue arrest warrants and such warrant is then issued. The warrant lists the charges for which the person is arrested. Formerly, there were two modes of instituting prosecutions for felonies in Virginia, one by a warrant emanating from a justice, the other by indictment, presentment or information. Chahoon v. Commonwealth, 20 Gratt. (61 Va.) 733. Now, however, prosecution for a felony must be instituted by indictment or presentment, except that the accused may waive this requirement by a writing signed by him. Va.Code § 19.1–162 (1960 repl. vol.); 5 Michie's Jurisprudence 12.

The Sixth Amendment right to counsel has been the source of a great deal of recent litigation, including several landmark decisions by the Supreme Court. While the leading cases are recent ones, the principle is by no means new. In Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the Supreme Court held that a person accused of a crime requires the guiding hand of counsel at every step in the proceedings against him and that that Constitutional principle is not limited to the presence of counsel at trial. This right has been held to apply at arraignment; Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1963); at post indictment lineup; United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and at preliminary hearings, Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); cf. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), holding that the privilege against compulsory self incrimination includes a right to

counsel at a pre-trial custodial interrogation. See also Massiah v. United States, 377 U.S. 201, 884 S.Ct. 1199, 12 L.Ed.2d 246 (1964). The analysis utilized by the court has centered around the determination of whether the proceeding at which a defendant claims a right to counsel is a critical stage of the criminal prosecution. More specifically, the court has stated that the right to counsel attaches whenever counsel's absence might derogate from the accused's right to a fair trial, United States v. Wade, supra, 388 U.S. at 226, 87 S.Ct. 1926, and that courts must analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice. *Id.*, at 227, 87 S.Ct. 1926; see also Coleman v. Alabama, supra, 399 U.S. at 7, 90 S.Ct. 1999.

It was clear from *Wade* and *Gilbert* that post indictment lineup was a critical stage of criminal prosecution and that the Sixth Amendment right to counsel attaches. It was not clear, however, whether *Wade* and *Gilbert* applied to pre-indictment lineup, and the issue of the applicability of *Wade* and *Gilbert* to pre-indictment confrontation had divided the courts. Compare State v. Fields, 104 Ariz. 486, 455 P.2d 964 (1964); Perkins v. State, 228 So.2d 382 (Fla.1969); Buchanan v. Commonwealth, 210 Va. 664, 173 S.E.2d 792 (1970); State v. Walters, 457 S.W.2d 817 (Mo.1970); with United States v. Green, 429 F.2d 193 (5th Cir. 1970); Palmer v. State, 5 Md.App. 691, 249 A. 2d 482 (1969); Hayes v. State, 46 Wis. 2d 93, 175 N.W.2d 625 (1970).

The United States Supreme Court has again addressed the issue in Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L. Ed.2d 411 (1972). The defendant, Kirby, and a companion were stopped on a Chicago street and asked to identify themselves. Kirby was unable to satisfactorily explain his possession of travelers checks and a social security card which belonged to another person, so the police took him to the police station. Upon arriving at the station, the officers learned that the person whose name appeared on the items in Kirby's possession had reported that he had been robbed. The person who had been robbed came to the police station and identified Kirby and his companion as the men who had robbed him. There was no lineup; Kirby and his companion were the only ones present. Kirby was charged within the next two days and indicted six weeks later. At the trial, the person who was robbed testified that he had identified Kirby at the police station, and he also identified him in court. Kirby appealed his conviction, which was affirmed by the Illinois Appellate Courts, to the United States Supreme Court which granted certiorari "limited to the question" of whether the *Wade-Gilbert* per se exclusionary rule is applicable to pre-indictment confrontations. *Kirby*, at 686, 92 S.Ct. at 1881.

The court affirmed Kirby's conviction, which would seem to indicate that a pre-indictment confrontation is not a critical stage of the criminal prosecution. However, the language of the opinion is by no means clear as to when the Sixth Amendment right does attach. As previously mentioned, the fact that the court expressly stated in the opinion that certiorari was granted to decide the question of whether *Wade-Gilbert* applies to pre-indictment confrontations strongly suggests that the court has decided to limit those opinions to post-indictment. Yet other language in the opinion casts doubt upon this interpretation. For example, early in the opinion, the court states:

"In the present case we are asked to extend the *Wade-Gilbert* per se exclusionary rule to identification testimony based upon a police station showup that took place *before* the defendant had been indicted or *otherwise formally charged.*" *Kirby* at 684, 92 S.Ct. at 1879. [Last emphasis added]

It is not clear what "otherwise formally charged" means, but the rationale of the

court's decision clarifies it somewhat. The court stated:

"In a line of constitutional cases in this Court stemming back to the Court's landmark opinion in Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." *Kirby*, at 688, 92 S.Ct. at 1881.

The court focused upon the initiation of judicial criminal proceedings, stating that it is the starting point for our whole system of adversary criminal justice. "It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." Evidently, the court did not consider that prosecution of Kirby started until he was indicted six weeks after the identification because, although Kirby was *charged* shortly after the identification, the court stated, "we decline to depart from that rationale today by imposing a *per se* exclusionary rule upon testimony concerning an identification that took place *long before the commencement of any prosecution whatever.*" [Emphasis added.] Kirby at 690, 92 S.Ct. at 1883. Thus, it seems that the focus in *Kirby* is upon whether prosecution of the defendant can be said to have started. This is certainly not a new inquiry; in fact, it is the language of the Constitution itself.[1] It is the opinion of the court that the *Kirby* opinion should not be read to extend the Sixth Amendment right to counsel beyond the facts of *Wade* and *Gilbert* cases. It seems to this court that it would be a twist of logic to read the dictum of a case to expand a right which the express holding

purports to limit. Just as many courts felt that the rule of *Wade* and *Gilbert* was limited to post indictment because the facts were post-indictment, *Kirby* may be read to apply only to pre-charge situations, leaving open the question such as that presented by this case where the defendant has been charged but not yet indicted. In view of the wide diversity of state criminal practices, there may not be any magic words which delineate for all purposes what is and what is not a critical stage of the proceedings within the meaning of the Sixth Amendment. The court declines to adopt any such mechanical application of the *Kirby* opinion based solely on when the defendant has had an arrest warrant sworn out against him. All of the circumstances must be considered together.

■ In the present case, petitioner was picked up near the place where the stolen vehicle slid off the road; he had a fresh cut on his finger and the stolen vehicle had blood on the inside. Petitioner was taken to the police station, where an arrest warrant was issued. Approximately thirty minutes later, he was identified. Even though the evidence against petitioner was strong, the police could only be sure they were holding the right man if the witnesses identified him. It is quite possible that petitioner could have been exonerated by their statements and released without having to spend the night in jail. Fairness to all involved demands that the accused be identified as soon as possible while the witness's memory is still fresh. Where, as here, the identification follows close upon the heels of the arrest, and the criminal machinery is still in the investigatory stage, even though a warrant had been sworn out by police officers, the court is of opinion that counsel is not required. It does not seem to this court that petitioner had come face to face with the adversary judicial criminal prosecution by the state when he was identified the night of the

1. "In all criminal prosecutions . . . ."

arrest. *Kirby*, supra, at 690, 92 S.Ct. 1877. The court concludes, therefore, that counsel was not required at petitioner's pre-indictment identification.

■ If it be assumed, however, that petitioner was entitled to counsel at his identification, it is nevertheless clear from the record that his in-court identification had an independent source, Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), and was thus purged of the primary taint. United States v. Wade, 388 U.S. 218, 241, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1968). The record shows that Turner got a good look at petitioner and even talked with him for a few minutes. His identification at the police station took place almost immediately after he saw petitioner, leaving little chance that the in-court identification would be based upon the police station identification rather than upon his recollection of petitioner when he saw him at the scene of the accident. See Terry v. Peyton, 433 F.2d 1016 (4th Cir. 1970); United States v. Marson, 408 F.2d 644, 651 (4th Cir. 1968), cert. den. 393 U.S. 1056, 89 S.Ct. 695, 21 L.Ed.2d 698. Turner's identification at the trial was positive and unwavering. He was thoroughly cross examined, including inquiries concerning his capacity to observe and recollect, and he still positively identified petitioner as the driver.

■ Although admission of the statement made by Turner at the trial, that he had identified petitioner earlier at the police station, may, assuming he had a right to counsel, have been error (see *Gilbert*, supra), based upon . . . the strength of Turner's identification in court and the wealth of other evidence that petitioner was driving the car (he was found in the vicinity of the car; the inside of the car had fresh blood on it and petitioner had a fresh cut on his finger, and the keys to the car were found on his person), the court concludes that the admission of Turner's out of court identification, if erroneous, was harmless error beyond a reasonable doubt. See *Gilbert*, supra, 388 U.S. at 274, 87 S.Ct. 1951; Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705 (1967).

The other witness who identified petitioner did not testify as to his police station identification but only identified him in court. For the same reasons that Turner's identification was found to have an independent source, the court also finds that Cressel's in-court identification had a source independent of the police station identification. Cressel's station house identification followed almost immediately upon his seeing him at the store. Cressel stood face to face with petitioner when petitioner asked him to call a wrecker. Cressel remembered exactly the clothing petitioner wore and even the type and name of the whiskey bottle which petitioner had stuck in his belt. The court is of opinion that the record firmly establishes that Cressel's in-court identification did have an independent source and that it was thus not error to admit it.

The court notes that petitioner has not raised any claim of denial of due process arising from the method of the identification before this court or before any of the other courts from which he has sought relief. Therefore, such considerations will not be passed upon here, although the record is devoid of any indications of foul play or unfairness in the conduct of the identification. Cf., *Kirby*, supra, 406 U.S. at 690, 92 S.Ct. 1877.

■ As an additional ground for relief, petitioner claims that he was illegally interrogated. It appears from the transcript that the following events transpired. Petitioner was picked up near where the automobile had gone off the road. When he got into the car, one of the officers asked him if he was driving the car. Petitioner said he wanted an attorney. The police told him he was not under arrest and asked him if he was driving the car, and he said yes. After they got to the station, petitioner was advised of his rights; the only questions asked after that point related to the seriousness of the cut to determine if emergency treatment, such as stitches, would be necessary. No state-

ments were made at the station. Nothing said by petitioner at the station was introduced at the trial (except that he wanted a lawyer), and the statement made by petitioner earlier that he was driving the car was not introduced by the Commonwealth but brought out by the defense when petitioner took the witness stand. It is possible that petitioner's rights were violated when he was placed in the police car and asked by the officers if he was driving the car. *Miranda*, supra. However, no one sought to use that statement against him; therefore, there was no error committed by the trial court.

Petitioner alleges that constitutional error was committed when the court allowed amendment of the indictment just prior to trial.

Count two of the indictment originally read as follows:

" . . . did then and there unlawfully and feloniously take steal and carry away from said building a set of automobile keys of the value of $1.-00 and from the lot adjoining said building one 1971 Dodge Polara Automobile of the value of $4,668.00, . . . "

Just before the arraignment on the day of trial, the Commonwealth's Attorney approached the bench and stated:

"In reviewing my case, sir, I observed that on Count 2, I have charged that not only were automobile keys taken from within the building but that a 1971 Dodge Polara was removed from a lot adjoining the building, this was a mistake on my part in preparing this indictment and our evidence will show that this was actually removed from within the building. I would therefore ask the Court for leave to amend the indictment and strike the words 'the lot adjoining'."

Defense counsel objected and said that it was too late to amend the indictment, although he claimed no prejudice, did not ask for a continuance, nor did he contend that the charge was substantially changed.

■ There is no merit to petitioner's claim. Va.Code § 19.1–176 (1960 repl. vol.) allows amendment of the indictment any time before the defendant pleads, so long as the character of the charge is not changed. Owsley v. Cunningham, 190 F.Supp. 608 (E.D.Va. 1961); Snead v. Smyth, 273 F.2d 838 (4th Cir. 1959). In a similar case, Robinson v. Commonwealth, 190 Va. 134, 56 S.E.2d 367 (1949), the Virginia Supreme Court upheld amendment of the indictment where the accused was indicted for breaking and entering a motor sales company and the indictment was amended to charge breaking and entering the garage building belonging to the motor sales company. The court saw this not as a change in the indictment but a clarification. The court agrees with the trial court that deleting the words "the lot adjoining" did not substantially change the indictment.

■ Petitioner further alleges that he received incompetent, inadequate and ineffective assistance of counsel. Petitioner states that his attorney should have spent more time with him before trial. The court rejects this contention. It appears from the record that counsel visited him in jail twice and represented him at the preliminary hearing. Petitioner alleges that counsel should have cited more law in his motions. The record shows that counsel raised all of the points available to him, particularly concerning pre-trial activities by the police, and he cited the standard cases. Where he cited no law, there was, in fact, law against him. Petitioner's claim is patently without merit.

■ Petitioner claims that his counsel should have asked for a continuance when the trial court allowed the indictment to be amended. Obviously, it was counsel's prerogative to use his discretion, and if he was ready to try the case and did not feel any prejudice due to the amendment, he certainly should not have made a frivolous motion. Such a motion would have been futile anyway since the court had already ruled that the amend-

**1322**

ment did not substantially change the charge.

■ Finally, petitioner says that counsel was ineffective because he did not get an acquittal. Success is not the test of competent representation. Mize v. Crouse, 399 F.2d 593 (10th Cir. 1968). It appears from the record that petitioner was quite ably represented. His lawyer was thoroughly familiar with the facts; he cross examined the witnesses at length, and was commended by the court on his representation of petitioner. The court holds that petitioner received competent, adequate, and effective assistance of counsel. See Root v. Cunningham, 344 F.2d 1, 3 (4th Cir. 1965); Snead v. Smyth, 273 F.2d 838 (4th Cir. 1959).

■ The court is also of opinion that petitioner received a fair and constitutionally sufficient trial and that his allegation that the trial court conducted a sham trial is without merit.

■ As the record contains a full development of all the factual matters necessary for a determination of petitioner's contentions, no further hearing is required. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

An order is this day entered consistent with this opinion.