WILLIAM GIBSON *v.* STATE OF MARYLAND

[No. 17, September Term, 1968.]

*Decided November 7, 1968.*

The cause was argued before MURPHY, C.J., and ANDERSON, ORTH, and THOMPSON, JJ.

*Joseph Zitomer* for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *James E. Kenkel, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant was convicted by a jury in the Circuit Court for Prince George's County of daytime housebreaking and assault and was thereafter sentenced to concurrent six-year terms under the jurisdiction of the Department of Correction. He contends on this appeal that his identification by the victim of the crime was conducted under conditions so unnecessarily suggestive and conducive to irreparable mistaken identity that he was denied due process of law.

The evidence adduced at the trial showed that at approximately 3:00 p.m. on April 19, 1967, a Negro male entered the home of Margie Jacobs without invitation, grabbed her leg, threw her backwards against the wall or window, reached down and felt between her legs and then, pursued by the victim's screams, ran from the house toward the rear of a Jumbo Supermarket located near the Jacobs' home. A young Negro man wearing a blue jacket was observed by David Eggleston fleeing from the general direction from whence the screams emanated, but he was unable to identify the individual whom he observed.

Mrs. Jacobs testified at the trial that she first observed her assailant standing on the porch of her home through a glass storm door; that she was only about ten feet from him and that he stood on her porch for about a minute before entering her house; and that after he had fled the crime scene, she immediately phoned the police and described him as a Negro male, about 5'9" tall, of slight build, 19 or 20 years of age, and wearing a navy blue coat and dark slacks. She further testified that on April 27, 1967, she identified appellant as her attacker from among four photographs shown to her by the police and also identified him at a two-man lineup held at the Hyattsville Police Station on May 1, 1967. She made an in-court identification of the appellant at the trial, testifying that there was no doubt in her mind that he was the person who broke into her home and assaulted her.

During her testimony, Mrs. Jacobs stated that she had never seen appellant before the crime, that she did not know where he was employed, and had never seen him working at the Jumbo Supermarket.

Detective Joseph Vasco testified that he obtained a description of the suspect by phone from Mrs. Jacobs on the day of the crime; that two days later Mrs. Jacobs phoned and told him that the individual who broke into her house "resembled a boy she had seen on the parking lot on previous occasions around the Jumbo," and that his name was Gibson, a fact which she had "apparently" elicited from the manager of the Jumbo Supermarket; that as a result of this information, he then phoned the Supermarket manager and gave him a description of the suspect and learned from the manager that appellant had been employed there at one time and "had returned for a pay check"; that after this conversation he secured appellant's photograph from police records and after going through some 50 to 75 other photographs, selected three others, showing the four photographs to Mrs. Jacobs at her home on April 27; that Mrs. Jacobs made a positive identification of appellant at that time; that thereafter on May 1, 1967, he phoned appellant's home in the District of Columbia and spoke with his mother, telling her that he wanted to see the appellant at the Hyattsville Police Station in connection with a rape case; that appellant came to the

Station that same day with his mother and was placed in a room with another young Negro male of similar appearance; and that Mrs. Jacobs identified appellant as her assailant at that time.

Appellant testified in his own behalf, stating that he had been fired from his job at the Jumbo store and was awaiting a ride home from his friend, an employee of Jumbo, at or about the time the crime was committed. Evidence was adduced by stipulation that appellant's friend would testify that he saw appellant on April 19, 1967 at 2:55 p.m. at the Jumbo store and drove home in his company at 3:00 p.m. that same day. There was testimony from appellant that Detective Vasco had coached Mrs. Jacobs at the lineup by telling her that "some changes have been made" in appellant's appearance, but the substance of this statement was denied by both Detective Vasco and Mrs. Jacobs.

We think it clear that any confrontation between a victim of a crime and the accused for identification purposes, including a photographic identification, may be conducted under conditions so unnecessarily suggestive and conducive to irreparable mistaken identification as to constitute a denial of due process of law. See *Simmons v. United States*, 390 U. S. 377; *Stovall v. Denno*, 388 U. S. 293; *Palmer v. Peyton*, 359 F. 2d 199 (4th Cir.); *Tyler v. State*, 5 Md. App. 265. Whether the accused's right to due process of law was violated in the conduct of such a confrontation depends on the totality of the circumstances surrounding it, *Stovall v. Denno, supra,* but a photographic identification will be set aside only if the procedure used was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," *Simmons v. United States, supra,* at page 384.

Appellant does not specify which of his three identifications by the victim was made under conditions "conducive to irreparable mistaken identity," but urges (a) that there was no need for a photographic identification; (b) that the three photographs shown to the victim bore no likeness to him; (c) that he should only have been placed in a lineup and not subjected to any photographic identification procedures; (d) that it was improper for the police to begin their search for suspects at the Jumbo Supermarket since the evidence showed a conflict be-

tween Detective Vasco's testimony and that of the victim concerning whether appellant worked at that store, and (e) that the lineup was unfair since he was induced to attend it under circumstances which "created an atmosphere of suspicion even before the identification," so that he was deprived "of an opportunity to behave like an innocent man."

On the record before us we hold that there is no substance to any of these arguments. In *Simmons,* the Supreme Court noted with approval that photographic identification procedures have been widely and effectively used in criminal law enforcement, "from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs" (at page 384). The fact that it may have been Mrs. Jacobs who initially supplied appellant's name to the police, based on her observation of an individual whom she had previously seen on the parking lot of the Jumbo Supermarket, does not in any way render the photographic identification procedure subsequently employed "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" within the meaning of *Simmons.*[1] Mrs. Jacobs had a full opportunity to observe the appellant's features, as she had seen him standing on her porch for approximately one minute before his entry into the house. In identifying the appellant, she testified that his picture "fits exactly how I recall Mr. Gibson looking as he stood outside my door." The four photographs used by the police were placed in evidence and we have reviewed them; and while quite naturally there are differences in the facial features of the persons depicted in the photographs—differences which Mrs. Jacobs pointed out in her testimony—we are satisfied that the manner and mode of the photographic identification procedure was proper under the circumstances and violated no constitutional rights of the appellant.

Nor do we believe that the victim's identification of the ap-

---

1. We do not view Mrs. Jacobs's testimony that she had never seen appellant before the crime as wholly inconsistent with Detective Vasco's testimony that Mrs. Jacobs had told him that she previously saw a person who resembled her attacker on the Supermarket parking lot.

pellant at the two-man lineup was prejudicially inspired. While the record does disclose that the victim was told prior to identifying the appellant in the lineup that he would be present, the evidence shows that the persons were of similar age, height, weight, coloring and build. The record shows that Mrs. Jacobs positively identified the appellant at the lineup, even though there had been some change in his hair between the time of the crime and the time of the lineup. We think the lineup procedure used, although of borderline constitutionality, was not so unnecessarily suggestive and conducive to irreparable misidentification as to constitute, in view of the totality of the circumstances, a denial of due process. The fact that the appellant may have been falsely induced by the police to come into Maryland to attend the lineup from his home in the District of Columbia is of no consequence on the facts of this case in evaluating the constitutional fairness of the lineup.[2]

Having concluded that neither the photographic identification nor the lineup identification violated appellant's right to due process of law, we hold that the in-court identification was not impregnated with mistaken notions of identity derived from the earlier identification procedures. The victim's identification of appellant at trial was positive and emphatic and we do not find it to have been in any sense the product of an unconstitutionally tainted pre-trial confrontation.

*Judgments affirmed.*

---

**2.** As the lineup was conducted prior to the Supreme Court's decision in *United States v. Wade,* 388 U. S. 218, and *Gilbert v. California,* 388 U. S. 263, it is not contended that appellant's right to counsel was violated.