## GEORGE SANDERS SMITH AND JESSE SAMUELS *v.* STATE OF MARYLAND

[No. 226, September Term, 1968.]

*Decided February 10, 1969.*

*Reginald D. Malloy* and *James J. Casey* for appellants.

*William E. Brannan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Richard J. Kinlein, State's Attorney for Howard County,* and *Charles E. Wehland, Assistant State's Attorney for Howard County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

These cases before us on appeal present questions with regard to evidence of the identification of an accused at trial and prior to trial, in substance as to the admissibility of such evidence and procedurally as to the manner in which it is presented.

## THE ADMISSIBILITY OF IDENTIFI-
## CATION EVIDENCE

At the time the *Wade—Gilbert—Stovall* trilogy of opinions were decided by the Supreme Court of the United States [1] it was the general rule in this State that a judicial identification of the accused, made under the impartial eye of the court, was admissible. It was also the general rule that a witness' testimony as to a prior extra-judicial identification "should be admitted for the purpose of corroborating the witness and bolstering his credibility * * *." *Judy v. State,* 218 Md. 168, 174. And testimony by a police officer or some third party as to an extra-judicial identification by an eye-witness was admissible when made under circumstances precluding the suspicion of unfairness or unreliability, *Walters v. State,* 242 Md. 235, 239, where the out of court declarant was present at the trial and

---

1. *United States v. Wade,* 388 U. S. 218, *Gilbert v. State of California,* 388 U. S. 263, *Stovall v. Denno,* 388 U. S. 293, each decided 12 June 1967.

subject to cross-examination, *Johnson v. State,* 237 Md. 283. It was admissible whether or not the out-of-court declarant made a positive in-court identification, and thus was admissible not only as corroboration of a judicial identification but as substantive evidence.[2] *Johnson v. State, supra,* 289. See also *Proctor v. State,* 223 Md. 394; *Basoff v. State,* 208 Md. 643; *Wilkins v. State,* 5 Md. App. 8; *Crumb v. State,* 1 Md. App. 98. The weight to be given a judicial or extra-judicial identification was a matter for the trier of fact. *Barnes v. State,* 5 Md. App. 144; *Crosby v. State,* 2 Md. App. 578. An extra-judicial identification is usually made either by a personal confrontation between the witness and the accused or by a viewing of photographs by the witness and the rules above discussed were applicable to both. See *Austin v. State,* 3 Md. App. 231. But neither a personal confrontation between the witness and the accused nor the viewing of photographs by the witness is a testimonial or communicative act of the accused and is not within the ambit of *Miranda v. Arizona,* 384 U. S. 436. *Barnes v. State, supra.*

We discussed *Wade, Gilbert* and *Stovall* at length in *Palmer v. State,* 5 Md. App. 691 and *Tyler v. State,* 5 Md. App. 265. We found that the rules of *Wade* and *Gilbert* apply to lineups, both pre-indictment and post-indictment, and to other pre-trial confrontations "that are not subject to fair and meaningful objective review later at the trial." [3] In *Baldwin v. State,* 5 Md. App. 22, we found that they do not apply to identifications made from photographs. See also *Barnes v. State, supra. Wade* and *Gilbert* were founded on the constitutional right to counsel and they held that a confrontation within their meaning was a critical stage of the proceedings. Therefore, absent a waiver of the right, such confrontation without the presence of counsel for the accused was illegal. They then fashioned exclusionary

---

2. "There is a split among the States concerning the admissibility of prior extra-judicial identifications, as independent evidence of identity, both by the witness and third parties present at the prior identification. See 71 A.L.R.2d 449." *Gilbert v. California, supra,* 272, note 3.

3. Thus the strictures of *Wade* and *Gilbert* are not applicable to preliminary hearings. *Tyler v. State, supra.*

rules as to evidence of identification made at an illegal confrontation. They are:

"1) The in-court identifications of the accused by witnesses at such confrontation are to be excluded unless the prosecution establishes 'by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the confrontation identifications,' that is that they had an 'independent source.' *Wade* at 240 and 242.

2) Evidence that witnesses identified the accused at such confrontation is *per se* to be excluded. *Gilbert* at 272-274.

3) The admission of evidence, to be excluded under 1) and 2) is prejudicial error unless, in any event, its introduction was harmless error beyond a reasonable doubt, applying *Chapman v. State of California,* 386 U. S. 18. *Wade* at 242; *Gilbert* at 274."

*Stovall* held that *Wade* and *Gilbert* affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after 12 June 1967 at 296. And *Stovall* also recognized that independent of any right to counsel claim, a confrontation may be "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to be a denial of due process of law.

*Wade* and *Gilbert,* therefore, affect the rules previously followed in this State with respect to the admissibility of evidence as to a judicial or extra-judicial identification only as to personal confrontations between the witness and the accused declared by those opinions to be illegal by the absence of counsel. It is only then that the exclusionary rules would apply in determining the admissibility of such evidence.

In *Stovall* the challenged confrontation was prior to 12 June 1967 and thus *Wade* and *Gilbert* were not applicable. But the Court said that it was a recognized ground of attack upon a conviction, independent of any right to counsel claim, that a pretrial confrontation was "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to be a denial of due process of law. Such a claimed violation of due process

of law depends on the totality of the circumstances surrounding it. Although the Court recognized that the circumstances of a confrontation may result in a denial of due process of law, it found, on the totality of the circumstances surrounding the confrontation there, that due process had not been denied. It did not enunciate exclusionary rules applicable when there is such a denial, but we think it follows that when a confrontation is illegal, whether by the denial of the constitutional right to counsel or the constitutional right to due process of law, the same exclusionary rules would apply. We hold that when a pre-trial confrontation is found to be illegal by the denial of due process of law, the exclusionary rules, enunciated in *Wade* and *Gilbert,* as hereinbefore set out, are applicable. Thus the admission of evidence of identification at the illegal confrontation and the admissibility of an in-court identification, as substantive, independent evidence of identity, is to be determined in accordance with those rules.

A viewing of photographs by a witness is not rendered illegal by the absence of counsel for the accused, as there is no constitutional requirement that counsel be then present. *Barnes v. State, supra.* As to the admissibility of evidence of identity by photograph, the rationale of *Stovall* applies. In *Simmons v. United States,* 390 U. S. 377, the Supreme Court, after discussing the hazards of initial identification by photograph, said, at 384:

> "Despite the hazards of the initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be

considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in *Stovall v. Denno*, 388 U. S. 293, 301-302, 87 S. Ct. 1967, 1972-1973, and with decisions of other courts on the question of identification by photograph."

Thus when it is shown that a pre-trial identification by photograph, on the totality of the circumstances surrounding it, was so unnecessarily suggestive as to give rise to a very substantial likelihood of irreparable misidentification, the admission of evidence of such identification or an in-court identification, as substantive independent evidence of identity, is determined, as when a pre-trial confrontation is shown to be illegal by denial of due process of law, pursuant to the exclusionary rules of *Wade* and *Gilbert*.[4] We note that the rules of law of this State relating to identification evidence existing prior to *Wade* and *Gilbert* are still effective as qualified by the exclusionary rules enunciated in those opinions.

## THE PROCEDURE UPON CHALLENGE OF EVIDENCE OF IDENTIFICATION

Evidence of the identity of the defendant may be challenged by a motion to exclude or suppress such evidence made before or during trial or by an objection to the evidence when it is of-

---

4. This Court has discussed identification by photograph in a number of opinions. See *Gibson v. State*, 5 Md. App. 320; *Tyler v. State, supra; Vios v. State*, 5 Md. App. 200; *Barnes v. State, supra; Wilkins v. State, supra; Baldwin v. State, supra; Brown v. State*, 4 Md. App. 612; *Rath v. State*, 3 Md. App. 721; *Austin v. State, supra; Carroll v. State*, 3 Md. App. 50.

We note that if an arrest is illegal, an in-court identification and evidence of identity by a pre-trial confrontation or by photograph is not inadmissible as the fruits of an illegal arrest. *Jones v. State*, 5 Md. App. 489.

fered. Md. Rules 725, 522. If the motion is made before trial it may be determined by the court before trial or the court may order that it be deferred for determination at the trial of the general issue. Rule 725d. When the determination of the admissibility of the challenged evidence is made during a trial before a jury, evidence on the issue shall be received out of the presence of the jury. At the hearing on the issue raised by the challenge the burden is on the defendant to show, *prima facie,* that the pre-trial confrontation or viewing of photographs was illegal, and if he so shows, the burden shifts to the State to show by clear and convincing evidence that it was legal. If the court finds that the State has met its burden and that the pre-trial confrontation or viewing was legal, an in-court identification by the witness present at the pre-trial confrontation or viewing is admissible as substantive evidence. And if such witness made a pre-trial identification, his testimony to that effect is so admissible. And, the testimony of a third party present when the pre-trial identification was made is so admissible provided the out-of-court declarant is at the trial and subject to cross-examination; whether or not he makes an in-court identification. If the court finds that the pre-trial confrontation or viewing was illegal, any and all evidence of the pre-trial identification is *per se* inadmissible. The burden is then on the State to establish that the in-court identification offered had a source independent of the illegal pre-trial confrontation or viewing. It must do this "by clear and convincing evidence" that the in-court identification is based "upon observations of the suspect" by the witness other than the confrontation or photographic identifications. The test is that quoted in *Wong Sun v. United States,* 371 U. S. 471, 488, set forth in *Wade,* 388 U. S. at 241:

> "[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

The Court in *Wade,* at 241, observed that the application of the test in the context of the matter before it required consideration

of various factors. It gave as examples, "the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." We think that comparable factors are also to be considered as to confrontations within the meaning of *Wade* other than lineups and as to the viewing of photographs. If, applying the test, the court finds that the State has met its burden and that the in-court identification has an independent source, it is admissible as substantive evidence.

The question arises, when the court has found that an in-court identification is admissible, whether the evidence produced on the issue of its admissibility must be placed before the trier of fact as with the question of the voluntariness of a confession. *Davis v. State,* 1 Md. App. 581. We noted the question in *Smith v. State,* 5 Md. App. 23, note 4, but had no need to resolve it. We think it clear that because of the exclusionary rules applicable, the determination of whether or not the pre-trial confrontation or viewing of photographs was legal, is a matter for the court exclusively. By those rules an in-court identification may be properly admissible even though the pre-trial identification was not. Therefore, it cannot be the obligation of the State to put before the trier of fact evidence of a pre-trial identification which is *per se* to be excluded as obtained by an illegal procedure and which, if admitted, would require a conviction to be set aside unless shown to be harmless error beyond a reasonable doubt.[5] This is not to say that the defendant cannot cross-examine the State's witness making an in-court identification at the trial of the general issue, if he chooses, so

---

5. On appellate review, the admission of evidence of identity, to be excluded by reason of an illegal pre-trial procedure, is prejudicial error unless, in any event, its introduction is found by the Appellate Court to be harmless error beyond a reasonable doubt under the rule of *Chapman v. California,* 386 U. S. 18.

as to bring out the circumstances surrounding a pre-trial identification by that witness even though the court had held the procedure by which the pre-trial identification was made to be illegal, nor does it prevent the defendant from introducing evidence on the matter as part of his case. Such evidence so elicited by the defendant is proper as affecting the weight of the identification evidence produced by the State and the credibility of the identifying witness, matters for the trier of fact.

## THE INSTANT CASE

The appellants [6] and Phillip Leroy Nicholson and Leroy Eugene Stratford were jointly indicted for crimes against the person and property of Frank McElroy. They were charged with robbery with a deadly weapon (1st count), robbery (2nd count), larceny of an automobile (3rd count), grand larceny (4th count), and assault and battery (5th count). The appellants were jointly tried before the court in the Circuit Court for Howard County [7] and each was found guilty on the 1st and 5th counts, the court finding that upon the conviction under the 1st count the 2nd, 3rd and 4th counts merged into it. Each appellant was sentenced to 15 years on the 1st count and to 3 years on the 5th count to be served concurrently with the sentence imposed on the 1st count. On appeal each claims error in the admission of evidence identifying him as one of the perpetrators of the crimes and each contends that the evidence was not sufficient to sustain the convictions.

### Evidence of the Identity of the Appellants

Neither appellant moved before trial to suppress or exclude evidence as to identification. The first witness called by the State was the victim, McElroy. He recounted the circumstances of the crimes and testified that he had looked at photographs and attended a lineup. He said he identified "one or two of them" from the photographs and that he had picked someone out of the lineup. He was then asked, "Who did you pick out

---

6. The indictment gave the name of Smith as "George Samuel Smith." Prior to trial, upon motion of the State, without objection by Smith, the indictment was amended to read "George Sanders Smith."

7. Nicholson and Stratford were not tried with them.

of the lineup?" At that point Smith's attorney objected. After lengthy discussion and argument by the appellant's counsel and the State as how to proceed, all parties and the court agreed, as we read the record, that the matter would be considered by the court on a motion on behalf of each appellant to suppress all evidence as to identifications of them, both judicial and extrajudicial. The State and the appellants offered evidence on the matter. The victim, called by the State, made a positive in-court identification of each appellant. It was clear from his testimony that he had viewed a large number of photographs on several occasions at the insistance of the police and that he had attended two lineups. It was also clear that he made identifications by these procedures. He said he identified each appellant from photographs, that he picked Smith from a lineup in which there were six men and that he picked Samuels out of another lineup. It also seemed that he made an extra-judicial identification of one of the other two robbers but other than his testimony as to his identification of Smith at the first lineup, it cannot be ascertained with certainty from all of his testimony what other extra-judicial identifications he made and when. He made abundantly clear, however, that his in-court identification of each appellant was from his observations of them at the time of the commission of the crimes. He was in a car with them for two and a half hours; Smith on the right front seat—"he was looking right at me when he had my wallet"—(taking out the money and looking through the cards in it); Samuels was next to him in the right rear seat; although it was dark, the parking lot where the robbers first approached him was lighted and the overhead light in the car was "occasionally" turned on, once for 10 or 15 minutes; he saw their faces; he could identify all four of them; he was beaten by them while out of the car on two occasions, once when they first approached him when he was getting in his car on the parking lot, and again shortly before he was released by them. He said he could identify the appellants "disregarding any pictures" shown him and "disregarding" anything he saw at the time of the lineups.

What extra-judicial identifications McElroy made and under what circumstances were clarified in large measure by the testimony of police officers called by the State and evidence pro-

duced by it. This testimony and evidence showed that McElroy identified Smith at a lineup held at 11:45 A.M. the day after the crime. Samuels was not in that lineup. Five photographs of the lineup were admitted in evidence. A second lineup was conducted more than a month thereafter. Neither of the appellants were in that lineup. No other lineups were viewed by McElroy. McElroy identified Samuels from a single photograph shown him by the police. The circumstances surrounding that identification are hereafter discussed. There was testimony by one police officer that McElroy was shown photographs by the police after the lineup but the matter was not further explored on direct examination or cross-examination of him.

Smith testifying for the defense on the motion, said he appeared in a lineup on 11 November with Nicholson and four other men. The police brought some people in but no identifications were made. He claimed McElroy did not even view the lineup.

On this evidence the court found that McElroy had identified Smith at the first lineup but at no other lineup and that he had identified Samuels from one photograph shown him by the police but not at any lineup.[8]

*The Admissibility of the In-Court Identification of Smith*

On appeal Smith's contention as to the identification evidence goes only to the in-court identification of him by McElroy. He claims that the lineup at which the extra-judicial identification was made, held after 12 June 1967, was illegal because it was conducted without the presence of an attorney rep-

---

8. The court commented that were it to believe Smith, it could find that he had not been identified at a lineup. It noted that McElroy "apparently was confused as to identifying both appellants in the (first) lineup." We note that Nicholson was in the first lineup and when McElroy said he picked two of his assailants out of that lineup he may have meant Nicholson as the other, but the record does not disclose this. It appears from the record that he made identifications at the second lineup in which the appellants did not appear. The State's Attorney said, "A second lineup was held and other people were identified." He felt it advisable not to offer testimony on the subject as the "other people" would be tried later.

resenting him. He does not assert that the lineup was otherwise unfair, either in its makeup or in the manner in which it was conducted and, in any event, we believe that the court could properly find that it was fair from the testimony and evidence before it. Smith argues that since the lineup was illegal due to the absence of counsel, the in-court identification should have been excluded. He cites the *per se* exclusionary rule as to the admissibility of evidence of identifications at an illegal pre-trial confrontation but does not apply it to his case. The thrust of his argument is that the State did not show that the in-court identification had a source independent of the illegal lineup and therefore the in-court identification was inadmissible. The court below in denying the motion to suppress found that Smith had waived his right to counsel.

In *Wade,* at 237, the Court indicated that there may be an "intelligent waiver" of the right to counsel at the lineup, citing *Carnley v. Cochran,* 369 U. S. 506. Trooper William F. George of the Maryland State Police, testifying for the State on the motion said that some time between 10:50 and 11:45 A.M. when the lineup was held Smith "was advised that he had a right to contact an attorney, talk to an attorney, or have an attorney present at the lineup." Smith said he did not wish counsel present. At no time did Smith "request that the lineup be stopped and counsel be supplied." At 10:30 A.M. Smith was initially advised of his "constitutional rights * * * that he had the absolute right to remain silent and that anything he did, did say could and would be used against him in Court, and that he had the right to talk to a lawyer and have him present now or at any time during the questioning; and that if he did not have any funds to obtain a lawyer that one would be obtained for him." At that time he was also told the lineup would be conducted as soon as the witness arrived and that he had the right to have counsel present. "He was offered the time to make any phone calls which he might care to make. He made no phone calls. He did not request to make any phone calls and after being repeatedly asked if he would like to make phone calls, he still made no * * * indication that he wanted to make any phone calls." He was told "that he had the right to have an attorney or a lawyer present at the lineup, during the lineup and before

the lineup." George was asked by the court if he told Smith that if he could not afford a lawyer and wanted one that one would be provided for him. The trooper said that he did. Asked whether this was as to the lineup the witness said that he did not remember but he had been so informed prior to the conversation about the lineup and signed a waiver. The waiver was admitted in evidence. The waiver was a printed form containing the *Miranda* warnings and included the following:

> "If I cannot afford a lawyer, one will be furnished, without cost, before any questioning, if I so desire. I have also read the above and fully understand it."

It was signed by Smith. The date and time of the signing was designated on the form as 11-11-67, 10:50 hrs. On cross-examination the witness said that the police now have a waiver of attorney form specifically for lineups but did not believe they had such a form on 11 November.

Trooper Dennis E. Seymour testified on behalf of the State that shortly before the lineup Smith was told by George of his "rights to have an attorney present at the lineup and that a lineup was going to be held at the barracks." He did not know at the time that there was a waiver form for lineups but he was familiar with the opinion of the Attorney General—"any suspect participating in a lineup did have a right to have his attorney or one appointed for him present at the lineup while it was being conducted." The transcript then reads:

> "COURT: He was entitled to have his attorney or one appointed for him. What do you mean by that?
> A. Well, if the Court appointed an attorney, similar to one that defends him in a case of, if he wasn't able to afford one.
> COURT: Do you recall whether or not Mr. Smith was so advised?
> A. Yes, sir, he was advised.
> COURT: As to that? That he was entitled to an attorney or that if he couldn't afford one to have one appointed?
> A. Yes, sir.

COURT: I'm referring to the lineup now.

A. Yes, he was advised of his rights by Trooper George.

COURT: You were there when he was advised?

A. Yes, sir, I was.

COURT: Well, was he so advised as to—

A. Yes, sir, he was to my knowledge.

COURT: What was his answer?

A. That, again, he did not wish an attorney as before he did not wish an attorney present.

COURT: Did he say so?

A. Yes, he did."

Testifying on the motion Smith denied that he had ever been informed of his right to an attorney, privately employed or appointed, although he was told he did not have "to speak or say nothing because it might be used against you in court." He specifically denied that he was told he could have an attorney present at the lineup, but admitted he did not ask for one—"I ain't never been arrested before.[9] I didn't know nothing about no attorney or lawyer or nothing like that, but the man didn't ask us about no rights, about having none." On cross-examination it was elicited that he was 21 years of age, that he could read and had completed the equivalent of the third year of high school. He was handed the waiver form which was in evidence and read it out loud to the court. He admitted the signature thereon was his and that he signed it at "10:50" but he did not think it was before the lineup.[10] He said he was questioned but "they didn't question us long." On inquiry by the court he said the police just handed him the waiver and he signed it without reading it, without looking at it and without asking what it was.

We think that the court could properly find from the evidence before it that Smith had been sufficiently informed of his

---

**9.** It was shown on cross-examination that he had been previously arrested. He was not convicted and he "didn't figure it would go on his record."

**10.** On redirect examination Smith said he signed the waiver on the morning of the lineup.

right to counsel prior to the lineup and that he intelligently waived that right. Even if the waiver signed by Smith be considered as applying to a custodial interrogation it was not without probative value in the totality of the circumstances, being signed, as it was, so short a time before the lineup. And the testimony of Seymour was that Smith had been told that he was entitled to the presence of a lawyer at the lineup, that if he could not afford a lawyer one would be appointed for him and that Smith said he did not "wish an attorney as before he did not wish an attorney present" (at the questioning). The court also found that the in-court identification had a source independent of the lineup and on the record before us we cannot say that the court was clearly wrong in this judgment. We think that the lineup here was not illegal under the *Wade* ruling, but whether it was legal or illegal the State met its burden of establishing that the in-court identification was based upon observations of Smith other than the confrontation identification. We find no error in the denial of the motion to dismiss as to Smith.

*The Admissibility of the Judicial and Extra-judicial Identification of Samuels*

Samuels argues on appeal that the pre-trial identification of him by the photograph shown McElroy "was powerfully suggestive and extremely prejudicial" and that the State did not show that the in-court identification of him was "untainted by, and entirely independent of, the unfair pre-trial identification. Therefore, the Defendant's rights under the Sixth and Fourteenth Amendments of the United States Constitution and under Articles 5 and 21, Declaration of Rights, Constitution of Maryland, were denied." But no constitutional right to counsel is here involved as the evidence of identity obtained by a viewing of photographs, is not a confrontation within the meaning of *Wade* or *Gilbert*. From what we have hereinbefore stated, the question is whether the photographic identification procedure here followed denied Samuels due process of law.

Prior to receiving evidence on the motions to suppress, the victim, McElroy, had testified on the general issue, recounting the circumstances of the crime. He said that on 10 November

1967 as he was getting into his car parked in the parking lot at Laurel Race Track "four colored fellows" hit him "in the back of the head with their fists and knocked me down a couple of times." They shoved him into his car onto the back seat. Two sat on either side of him and the other two in the front seat. The robber on his left had a pistol. They took his wallet, removed the money from it and searched him. They found his pay check in his pocket. They drove around in the car "roughly two hours anyway," stopped on a road which the witness could not identify and told him to get out. They beat him with their fists—"they hit me so hard they knocked my loafers off my feet"—put him back in the car and told him that he was going to cash the pay check for them. They drove to Route 1 and stopped across the highway from a store. They said, "Now if you start anything * * * you're really going to get hurt bad, we're going to fix you up good." The witness testified, "I figured if I could get the check cashed they might let me go. * * * Well, I started in this store, so they had an accident there on Route 1 (the accident did not involve his car), so about this time, this State Trooper, you know, he was there at that moment so I jumped in his car and told him what had happened." The State Trooper was Seymour. At this point the motion to suppress the identification evidence was made and evidence received on the motion. Detective Harry M. Smith, Jr. of the Howard County Police Department said that he was on duty on 10 November 1967 and had "just received a broadcast over the police radio in reference to an assault and robbery and larceny of an automobile in which four colored males were supposed to be riding." As he approached Route 1 and Route 32 he saw Trooper Seymour's car and stopped to see what information he had. Detective Smith had a warrant for the arrest of Samuels and had been looking for him. He had picked up the photograph at the Laurel Police Department. "I thought that there was a possibility that this person may have been involved and gave the photograph to Trooper Seymour." Seymour got into his car and "showed it to the gentleman he had in the car." The photograph was admitted in evidence without objection. It was the usual "Mug Shot" of a person from the chest up, in full face and profile.

Seymour testified that he was investigating an accident. His car was parked in the slow lane southbound on Route 1 "almost directly in front of Woody's Tavern." McElroy came to his car, jumped in the passenger side door and "stated several times that they were going to kill him * * * He was looking around the vehicle toward the eastside of Route 1, looking around as if there was someone in pursuit of him at the time." Seymour got him quieted down, obtained a full description of the car, "occupied by four colored males, two of thin build and two of heavy build," and put a lookout over the radio to the Maryland State Police and the Howard County Police Department. Shortly after that, while he was "still clearing up the accident" and had McElroy in the car, Detective Smith came up and asked if he would show McElroy a photograph. "I showed him the picture and asked him to look at it and see if he could tell me anything about the person he saw." McElroy said it was one of the men who had robbed him. This evidence was not disputed.

Following the holdings in *Simmons v. United States, supra,* not cited in Samuels' brief, we observe that each case involving photographic identification procedure must be considered on its own facts, and "that convictions based on eyewitness identification at trial following a pre-trial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Applying the standard to this case we have no difficulty in determining that Samuels was not denied due process of law. The opportunity to show the photograph to McElroy was by mere happenchance, not design. An alert police officer, having just received knowledge of a crime recently committed, and in possession of an arrest warrant of a man wanted for an unrelated crime and his photograph, requested that the photograph be shown to the victim of the crime just perpetrated on the bare chance that the man he was seeking was one of the perpetrators. Serious felonies had been committed and the perpetrators were still at large, their identities unknown. Samuels was not even then a suspect. Further there was in the circumstances little chance that the procedure led to misidentifica-

tion of Samuels. As we have seen there was ample opportunity for McElroy to have observed Samuels over a period of two and a half hours during the commission of the crimes. We think it a fair appraisal that the viewing of the photograph did nothing to implant the identity of Samuels in the mind of McElroy but merely provided the police with the name and identity of one of the perpetrators. There was no showing that the trooper indicated in any way to McElroy that Samuels was or even might have been one of his assailants and in fact there was no reason for the trooper to think that he was. McElroy's in-court identification was positive and he made clear, in our opinion, that the identification was by his observations at the time of the crimes. We find that in the factual surroundings of this case the viewing of the photograph did not deny Samuels due process of law and hold that the court did not err in denying the motion to suppress the in-court identification.

At the close of all the evidence on the motions to suppress and upon the court's denial thereof there was discussion by the court, the State and appellant's counsel as to repeating the evidence received on the motions at the trial of the general issue. Counsel for Smith and counsel for Samuels each stated that they had no objection "if all the testimony given so far is placed in the regular record of the trial." The Deputy State's Attorney said, "With the exception of the identification of the photograph on the road, and I didn't intend to bring that up. The only reason I even brought it in was to be fair to (Samuels) on the motion * * *." As we read the record, however, the final agreement was that the evidence offered by the State on the motions would be considered as admitted as evidence in the State's case on the trial of the general issue. There was thus in evidence the identification by McElroy of Samuels from the photograph and the in-court identification of each appellant by McElroy. Thereafter, however, during the trial of the general issue each appellant objected to his in-court identification by McElroy. Samuels' counsel said, "I'd like to object to his identification of my client at any time during the trial." And Smith's counsel made the same objection. The court said, "Let the record show there's a continuing objection to the identification of the two defendants." It is not clear whether this objection went to the out-of-

court identifications as well as the in-court identifications or, if they did, whether they applied to the identifications already in evidence by the agreement as to the evidence on the motion. Assuming for the purpose of decision that objection was made to all evidence of identification, we find no prejudicial error. By our holdings herein, the in-court identification of each of the appellants was properly admissible. As we found that the line-up at which Smith was identified was legal, evidence of his identification thereat was properly admissible. It appeared that Mc-Elroy also identified Smith from a number of photographs shown him by the police but there was no showing that the photographic identification procedure there utilized was in any way impermissibly suggestive and evidence of that identification was therefore properly admissible. And in any event, Smith does not present the question on appeal as to the admissibility of extra-judicial identifications of him. We have found that the viewing of the photograph by McElroy in the police car was not a denial of due process of law. The identification so obtained came into evidence on the general issue only by way of the stipulation but in any event since we have found that the procedure utilized to obtain it was not illegal, it was properly admissible. And even if it were error to admit it, we can say, in the circumstances here present, that its admission was harmless error beyond a reasonable doubt, for not only was there the positive in-court identification of Samuels, which had an independent source, but a latent fingerprint, proved to have been impressed by Samuels, was found in the victim's car.

It appears from the comments of the court during the discussion leading to the agreement to consider the evidence of the State received on the motions to suppress as admitted on the general issue that it felt that the State was required to produce all such evidence before the trier of fact. As we have stated, this was not required. But aside from the fact that here the evidence was admitted with consent of the appellants, we have found that it was admissible. The appellants were, therefore, not prejudiced thereby in any event.

## THE SUFFICIENCY OF THE EVIDENCE

Each appellant claims that the evidence was not sufficient to

sustain his conviction. The *corpus delicti* of robbery with a deadly weapon and assault and battery distinct from the robbery were clearly established. The identifications of the appellants by the victim were sufficient to show their criminal agency. *Gibson v. State*, 4 Md. App. 222. But here, in addition, a fingerprint of Samuels and a palm print of Smith were found in the victim's car. The evidence showed directly or supported a rational inference of the facts to be proved, from which the court could fairly have been convinced, beyond a reasonable doubt of the appellants' guilt of the crimes of which they were convicted. *Williams v. State*, 5 Md. App. 450, 459. Thus its judgments on the evidence were not clearly erroneous and we may not set them aside. Md. Rule, 1086.

*Judgments affirmed.*