## GEORGE McCHAN *v.* STATE OF MARYLAND

[No. 267, September Term, 1969.]

*Decided April 14, 1970.*

318

The cause was argued before MORTON, ORTH, and THOMPSON, JJ., and MCWILLIAMS, J., Associate Judge of the Court of Appeals, specially assigned.

*David B. Allen* (*Milton B. Allen* on the brief) for appellant.

*T. Joseph Touhey, Assistant State's Attorney,* with whom were *Francis B. Burch, Attorney General, Julian B. Stevens, Jr., State's Attorney for Anne Arundel County, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Robert C. Ozer, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

George McChan (appellant), charged with the murder of Albert Poland Polotsky, was tried by a jury in the

Circuit Court for Anne Arundel County.[1] The jury rendered a verdict of guilty of murder in the first degree, adding thereto the words "without capital punishment." See Code, Art. 27, § 413. The two questions presented on appeal involve the admissibility of evidence of identifications of appellant, judicial and extrajudicial.

The basic principle enunciated in *United States v. Wade,* 388 U. S. 218 is that a lineup is a critical stage of the prosecution at which the accused is as much entitled to aid of counsel as at the trial itself. 388 U. S. 236. *Wade* and *Gilbert v. State of California,* 388 U. S. 263 fashioned exclusionary rules "to deter law enforcement authorities from exhibiting an accused to witnesses before trial for identification purposes without notice to and in the absence of counsel." *Stovall v. Denno,* 388 U. S. 293, 297. The precise holdings in *Wade* and *Gilbert* apply only to a post-indictment lineup conducted for identification purposes without notice to and in the absence of the accused's appointed counsel, see *Tender v. State,* 2 Md. App. 692, but we have found other pretrial confrontations to be within the contemplation of those opinions. See *Palmer v. State,* 5 Md. App. 691; *Smith and Samuels v. State,* 6 Md. App. 59. *Stovall* held that *Wade* and *Gilbert* affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after 12 June 1967. 388 U. S. 296. But *Stovall* also recognized that independent of the right to counsel claim, a confrontation may be so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law. In *Smith and Samuels* we held that when a pretrial confrontation is so held to be illegal as violating due process of law, the same exclusionary rules would be applicable as when such confrontation was found to be illegal by absence of counsel. 6 Md. App. 66.

---

1. The case was removed from the Criminal Court of Baltimore City at the suggestion of appellant. See *McChan v. State,* 9 Md. App. (1970).

## I

Appellant appeared in a post-indictment lineup conducted on 28 December 1966. Prior to trial appellant filed a motion "to exclude from consideration as evidence any identification testimony and evidence." The grounds were that a lineup at which identification was made was conducted in derogation of appellant's constitutional right to counsel and was thus illegal and that the identification of such illegal lineup "contributed substantially to the proposed courtroom identification and is so intertwined thereon that it is impossible for the Court to distinguish the extent to which said lineup identification influenced or affected or will effect the proposed courtroom identification." Upon hearing the motion was denied. Appellant contends the denial was error.

We accept for the purpose of decision that appellant did not have the assistance of counsel at the lineup in question and did not effectively waive the right. Even so he was not entitled to the application of the exclusionary rules of *Wade* and *Gilbert* because the lineup was conducted prior to 12 June 1967. Appellant argues that the lineup here was illegal due to the absence of counsel despite that it was pre-*Wade* and *Gilbert*. He urges that he was entitled to the assistance of counsel at the lineup under the dictates of *Massiah v. United States,* 377 U. S. 201, *Escobedo v. State of Illinois,* 378 U. S. 478 and *Miranda v. State of Arizona,* 384 U. S. 436. We do not agree. *Massiah, Escobedo* and *Miranda* apply the right to assistance of counsel when the right against self-incrimination is involved. See *Dixon v. State,* 1 Md. App. 623, 626. The constitutional right against self-incrimination "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature * * *." *Schmerber v. California,* 384 U. S. 757, 761. The mere appearance of an accused in a lineup does not involve self-incrimination. "We have no doubt that compelling the accused to merely exhibit his person for observation by a prosecution witness prior to trial involves

no compulsion of the accused to give evidence having testimonial significance. It is compulsion of the accused to exhibit his physical characteristics not compulsion to disclose any knowledge he might have." *United States v. Wade, supra,* at 222. *Massiah, Escobedo* and *Miranda* are simply not applicable to the viewing of a suspect for the purpose of identification.

Since at the time the lineup here challenged was conducted, mere absence of counsel did not render it illegal, the exclusionary rules of *Wade* and *Gilbert* were not applicable. We hold that within the frame of reference of the question presented the lower court did not err in denying the motion for judgment of acquittal.

## II

Appellant contends that aside from the right to counsel claim the lineup was so unnecessarily suggestive and conducive to irreparable mistaken identification as to constitute a denial of due process of law. On this premise also he now ascribes error to the denial of the pretrial motion. But this point was not tried and decided below in connection with that motion. Defense counsel made abundantly clear to the hearing court that they were relying only on the lack of counsel at the lineup. The transcript reads:

> "THE COURT: Is it your argument the lineup itself was unfair?
>
> MR. CARROLL (defense counsel): Doesn't make any difference whether the line-up was fair or not.
>
> THE COURT: Do you contend it was an unfair line-up?
>
> MR. CARROLL: I contend the man was denied his Sixth Amendment right to have counsel at a critical stage of the proceedings. Whether the line-up was fair or unfair, we don't know. * * *."

Counsel said that "the point is simple, basic. Mr. McChan was denied his Sixth Amendment rights" to assistance

of counsel. And after extensive argument counsel said: "We are not, for purposes of this argument, concerned about whether the lineup was fair or not." Just before the court ruled it said: "The whole thrust of your argument is Mr. McChan was denied counsel at a crucial point in the proceedings." Defense counsel answered, "Correct."

The right to counsel claim was the only point presented by the pretrial motion with respect to the issue of the legality of the lineup. We have disposed of it and no other question is properly before us. Rule 1085.

## III

When the case came on for trial in the Circuit Court for Anne Arundel County, defense counsel called the court's attention to the fact that a motion to suppress the identification evidence had been filed in the Criminal Court of Baltimore and determined prior to the suggestion of removal. He filed the motion again in the Circuit Court for Anne Arundel County—"The same motion for exclusion of testimony, and on which a ruling was made." He said, "[O]f course, if the Court feels that we have tried this motion already been ruled by a Court of competent jurisdiction and that this Court is bound by it and we are bound by it, then we would submit to such a ruling." The court found that the motion had been ruled on by a court of competent jurisdiction and that it would not entertain the motion because "the matter has already been ruled on." We agree that the trial court was not obliged to hear and determine the motion to suppress the identification evidence which had already been fully heard and determined. We find no error in the refusal to do so, particularly in view of defense counsel's submission to the action of the trial court.

Viola Forrester, the victim of the assault with intent to murder, made a positive judicial identification of appellant. This evidence came in without objection. Also without objection she testified that she had identified appellant from a group of five photographs shown her while

she was hospitalized as a result of her injuries received in the robbery and that she had identified appellant at a lineup. See Rules 522 d 2, 725 f. She was cross-examined at length with regard to the extrajudicial identifications. It was elicited that she "got a glimpse" of appellant once thereafter when "we were supposed to be going to court" and that she had also seen him on the morning of the trial. It appeared that she and another witness named Willie Clark were driven to Annapolis from Baltimore by the police. They were in the back seat of the automobile at the Baltimore City jail, waiting for the police to bring appellant out. A car came out of the jail gate and stopped beside the car she was in. Appellant was seated in the car and she saw him. The two cars were led to Annapolis by an officer on a motorcycle. The State then adduced testimony from police officers as to the extrajudicial identifications and the description of the robbers given by Viola Forrester. When trial resumed the next morning appellant filed a motion to exclude the courtroom identification of him made by Viola Forrester and to be made by Willie Clark. The ground stated was that the confrontations between the witnesses and appellant at the entrance to the Baltimore City jail rendered "a trustworthy courtroom identification impossible." Appellant testified on the issue. He said he entered a station wagon inside the jail walls. The wagon had three rows of seats with a protective screen between the driver's seat and the rear seats. The driver was an officer in uniform. Appellant was on the middle row of seats on the left side by the window back of the driver. He said he was placed in that seat by an officer. He was handcuffed, the cuffs were attached to a belt around his waist and there were leg irons on his ankles. There was a uniformed officer on the seat beside him and another on the seat behind him. The wagon pulled out of the jail gate and stopped beside the car containing Viola Forrester and Willie Clark. They looked at appellant, "as if they was expecting me." Appellant said to the police, "Now wait 'til I tell my lawyer about this." He said the

other time Viola Forrester saw him was during the hearing in the Criminal Court of Baltimore on the prior motions to dismiss the indictments and suppress evidence. Defense counsel was considering calling Miss Forrester, who had been sequestered, to the stand. The Assistant State's Attorney went to get her and she entered the courtroom, stood by the door, talked to the Assistant State's Attorney and then left without being called to testify.

The State called Viola Forrester to testify on the issue. She said she saw appellant in the wagon outside the jail. Asked how she knew it was Mr. McChan she said she had seen him at the bar the night of the robbery. On each occasion thereafter when she had seen him or his photograph she remembered him from the time she saw him during the commission of the crimes. "I still remember him, I'd never forget his face. * * * I would know him if he had a mustache or if he didn't have a mustache." He had come into the bar where the crimes occurred three times on the night of the robbery. The first time he stayed a couple of minutes, then he came back to drink beer, staying five or seven minutes, and the third time he held the bar up. He was only about three feet from her when he shot her and she was looking at him at the time. On cross-examination she said, "I remembered him clearly from that night, if I hadn't seen him since the night of the incident I still could remember him." Pressed on the point, she was emphatic that her identification stemmed from the time of the commission of the crimes.

The State called Clark to testify on the issue. He said he had been with appellant about an hour on 20 or 21 December 1966 when he came to the garage at which Clark was working. He saw him again the next day when he was with him four or five hours. He had seen him again in the wagon at the jail for the first time since December 1966.

Lt. Charles Bayrle testified that the meeting at the jail was for the purpose of security. "I followed them (McChan and his guards) down from the City Jail down to

the Court House here, and Viola Forrester and Willie Lee Clark was in the car with me."

The court denied the motion, finding that the in-court identification by Viola Forrester had not been tainted. We cannot say that this judgment on the evidence was clearly erroneous. Rule 1086. Even if the confrontation outside the jail and the confrontation at the prior hearing in the Criminal Court of Baltimore were illegal, we believe that the court properly found that the in-court identification by each of Forrester and Clark had been come at by means sufficiently distinguishable to be purged of the primary taint. We arrive at this conclusion by considering the factors indicated in *Wade,* at 241, in applying the test—namely, the prior opportunity to observe the alleged criminal act and the accused, the lack of any substantial discrepancy between the pre-confrontation description and the appellant's actual description, the identification by photograph and at the lineup and the lapse of time between the alleged act and the confrontations now challenged. We think that the State showed by clear and convincing evidence that the in-court identifications were based on observations of the suspect other than the confrontation identifications alleged to be illegal, that is that they had an independent source. We hold there was no error in the denial of the motion to suppress filed during the course of the trial.

## IV

Although not presented as a separate question, appellant claims error in the exclusion by the trial court of indictments, arrest registers and arrest warrants charging one Sage Singleterry and one Michael Gordon Ray with the murder and robbery of Polotsky and the assault on Forrester. Clark testified that he had driven appellant, Singleterry and another man (Ray) to the vicinity of the bar where the murder occurred and they left the car and returned in about 15 minutes. He drove them to another bar, the Club Federal. Irma Williams, a barmaid at the Club Federal, testified on behalf of appellant. She

said that on 21 December 1966 about 1:45 A.M. Single-terry, whom she knew, came in. "[H]e said he had just killed two people, and I told him he was kiddin', and so he pulled these guns out, and one was a black and white pearl-handle and another one looked like it was a silver gun." He said something about using two bullets and that she would read about him in the morning paper. He spread "a gang of bills" across the bar and asked another waitress if she wanted any. Appellant offered the indictments against Singleterry and Ray and the arrest registers and warrants relating thereto. The State objected on the ground of relevancy and the objection was sustained. We agree that the fact that Singleterry and Ray were arrested and stood indicted as co-participants in the murder of Polotsky and the offenses related thereto was not relevant to the guilt or innocence of appellant for the murder of Polotsky. We hold there was no abuse of discretion in the refusal to admit this evidence.

*Judgment affirmed.*