## LAWRENCE RUFUS JACKSON *v.* STATE OF MARYLAND

[No. 315, September Term, 1972.]

*Decided February 21, 1973.*

The cause was argued before ORTH, C. J., and CARTER and GILBERT, JJ.

*Edward P. Murphy* for appellant.

*Mary Elizabeth Kurz, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Michael Libowitz, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

## I

*United States v. Billy Joe Wade,* 388 U. S. 218, and *Jesse James Gilbert v. State of California,* 388 U. S. 263, were decided 12 June 1967. They held "that a post-indictment pretrial lineup at which the accused is exhibited to identifying witnesses is a critical stage of the criminal prosecution; that police conduct of such a lineup without notice to and in the absence of his counsel denies the accused his Sixth [and Fourteenth] Amendment right to

counsel and calls in question the admissibility at trial of the in-court identifications of the accused by witnesses who attended the lineup." *Gilbert*, at 272. It further held that no judicial identifications are admissible in evidence if their "source" is a lineup conducted in violation of this constitutional standard because "only a *per se* exclusionary rule as to such testimony can be an effective sanction to assure that law enforcement authorities will respect the accused's constitutional right to the presence of his counsel at the critical lineup." *Id.*, at 273. In *Stovall v. Denno*, 388 U. S. 293, also decided 12 June 1967, the Court announced that the *Wade-Gilbert* exclusionary rules were not to be retroactively applied: "We hold that *Wade* and *Gilbert* affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after this date." *Stovall*, at 296.

This Court discussed *Wade* and *Gilbert* at length in *Tyler v. State*, 5 Md. App. 265, *Palmer v. State*, 5 Md. App. 691, and *Smith and Samuels v. State*, 6 Md. App. 59. We recognized that the precise holdings of *Wade* and *Gilbert* go only to a post-indictment lineup, *Tyler*, at 270, but we believed that the rationale of the holdings, for reasons we set out in *Palmer*, at 695-696, mandated that the exclusionary rules applied also to pre-indictment lineups and to other pretrial confrontations, before or after indictment, which violate the constitutional standard and which are not subject to fair and meaningful objective review later at the trial. *Smith and Samuels*, at 64. We clearly saw in *Wade* and *Gilbert* indication, implicit at the least, that their holdings were not to be limited to post-indictment lineups. We so held. *Palmer*, at 696. Thereafter, we consistently applied the *Wade-Gilbert* holdings without regard to whether the confrontation was post-indictment or pre-indictment.[1]

---

1. See, for example, *Watson v. State*, 7 Md. App. 225; *Simon v. State*, 7 Md. App. 446; *Joyner v. State*, 7 Md. App. 692; *Cook v. State*, 8 Md. App. 243; *McChan v. State*, 9 Md. App. 317; *Williams v. State*, 11 Md. App. 607; *Vernon v. State*, 12 Md. App. 430; *Davis v. State*, 13 Md. App. 394; *Robinson and Jones v. State*, 13 Md. App. 439.

After a lapse of four years we are told that what we so clearly saw in *Wade* and *Gilbert* was really not there. In *Kirby v. Illinois,* 406 U. S. 682, argued 11 November 1971, reargued 20-21 March 1972, and decided 7 June 1972, a majority of the Supreme Court made evident that *Wade* and *Gilbert* did not mean what we thought they meant.[2] The opinion announcing the judgment of the Court concluded that a showup after arrest, but before the initiation of any adversary criminal proceeding, whether by way of formal charge, preliminary hearing, indictment, information or arraignment, unlike the post-indictment confrontations involved in *Wade* and *Gilbert,* is not a criminal prosecution at which the accused, as a matter of absolute right, is entitled to counsel.

The opinion announcing the judgment of the Court reached its conclusion by first noting that the constitutional privilege against self-incrimination was in no way implicated in compelling a person to exhibit his person for observation by a prospective prosecution witness prior to trial. 406 U. S. at 687. "It follows that the doctrine of *Miranda v. Arizona,* 384 U. S. 436, has no applicability whatever before us; for the *Miranda* decision was based exclusively upon the Fifth and Fourteenth Amendment privilege against compulsory self-incrimination, upon the theory that custodial *interrogation* is inherently coercive." *Id.,* at 688. In contrast the *Wade-Gilbert* exclusionary rule stems from the right to counsel guarantee of the Sixth and Fourteenth Amendments. The opinion then found firmly established from a line of

---

2. A majority of the Court concurred in the result reached in the opinion announcing the judgment of the Court. Stewart, J., announced the Court's judgment and delivered an opinion in which Burger, C. J., and Blackmun and Rehnquist, JJ., joined. Burger, C. J., filed a concurring statement. Powell, J., filed a statement concurring in the result. Brennan, J., filed a dissenting opinion, in which Douglas and Marshall, JJ., joined. White, J., filed a dissenting statement. It appears from Justice Brennan's dissenting opinion and Justice White's statement that they, and those joining them, saw in *Wade* and *Gilbert* what we saw. The opinion of the Court, listing citations, noted, note 5 at 687, that the issue of applicability of *Wade* and *Gilbert* to pre-indictment confrontation has severely divided the courts.

constitutional cases extending back to *Powell v. Alabama,* 287 U. S. 45, that the constitutional right to counsel attaches only at or after the time that adversary judicial criminal proceedings have been initiated.[3] It said, at 689-690:

> "The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable."

The opinion pointed out, at 690, that the rule of *Wade* and *Gilbert* was explained in *Simmons v. United States,* 390 U. S. 377, 382-383: "The rationale of those cases was that an accused is entitled to counsel at any 'critical stage of the *prosecution'*, and that a post-indictment lineup is such a 'critical stage.' (Emphasis supplied)." The *Kirby* opinion continued: "We decline to depart from that rationale today by imposing a *per se* exclusionary rule upon testimony concerning an identification that took place long before the commencement of any prosecution whatever." At 690.

The decision of this Court that the holdings of *Wade*

---

**3.** The opinion distinguished *Escobedo v. Illinois,* 378 U. S. 478, the "only seeming deviation from this long line of constitutional decisions," in two respects: (1) the "prime purpose" of *Escobedo* was "to guarantee full effectuation of the privilege against self-incrimination . . . ."; (2) the Court has limited the holding of *Escobedo* to its own facts, and "those facts are not remotely akin to the facts of the case before us." At 689.

and *Gilbert* were to be applied to pre-indictment as well as post-indictment confrontations was predicated upon our belief that such application was constitutionally compelled. Now that the Supreme Court has made clear that our belief was ill founded, we abandon our position. The holdings of *Wade* and *Gilbert* with respect to the constitutional right to counsel are to be invoked only as to those confrontations occurring at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. Therefore, the exclusionary rules based on right to counsel are not to be imposed upon testimony concerning an identification that took place before the commencement of the "criminal prosecution" within the meaning of *Kirby*.

The opinion announcing the judgment of the Court in *Kirby* observed that what it said about the constitutional right to counsel at pre-trial confrontations was not to suggest that abuse of identification procedures in the course of a criminal investigation were beyond the reach of the federal constitution. This is what the Court meant when it said in *Wade*, 388 U. S. at 227, that it is always necessary to "scrutinize *any* pretrial confrontation . . . ." The *Kirby* opinion explained, 406 U. S. at 691:

> "The Due Process Clause of the Fifth and Fourteenth Amendments forbids a lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification. *Stovall v. Denno,* 388 U. S. 293; *Foster v. California,* 394 U. S. 440. When a person has not been formally charged with a criminal offense, *Stovall* strikes the appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt and purposeful investigation of an unsolved crime."

This in substance was the firmly established law of Maryland before the *Wade-Gilbert-Stovall* trilogy.

*Smith and Samuels v. State, supra,* at 63-64. We concluded in *Smith and Samuels,* at 65, that *Wade* and *Gilbert* affected the rules previously followed in this State with respect to the admissibility of evidence as to a judicial or extra-judicial identification only as to personal confrontations between the witness and the accused declared by those opinions to be illegal by the absence of counsel. We held that the exclusionary rule of *Wade* and *Gilbert* applied to any pretrial confrontation which was in violation of due process of law under *Stovall. Id.,* at 65-66. We do not depart from that holding.

## II

LAWRENCE RUFUS JACKSON, born 24 July 1953, was arrested about 7:20 p.m. on 9 June 1971 during the course of a police investigation of the attempted robbery and shooting of one Conrad Ritter which occurred on 12 May 1971. On 11 June 1971 about 7:30 p.m. he was placed in a lineup viewed by Ritter. According to Ritter and a police officer, Ritter positively identified Jackson at the lineup as the assailant. On 14 June two petitions were filed in the Circuit Court of Baltimore City, Division for Juvenile Causes (Juvenile Court), alleging that Jackson was a delinquent child, giving as reasons the attempted robbery and shooting of Ritter. On 9 July the Juvenile Court waived jurisdiction over Jackson as to each petition and ordered him held for action under the regular criminal procedures. On 23 September he was presented and indicted for the attempted robbery of Ritter with a deadly weapon and the assault upon Ritter with intent to murder. The indictments came on for trial in the Criminal Court of Baltimore. Jackson elected a court trial and on 25 January 1972 he was found guilty of each offense. He was sentenced to 20 years on the attempted robbery conviction and to a 15 year concurrent sentence on the assault conviction. He appealed from the judgments.

On the day of trial, but prior to its start, Jackson filed

a motion "to suppress and exclude in-court identification of him by the prosecuting witness." The motion was heard as a preliminary matter and denied. The sole contention on appeal is that the court below erred in denying the motion to suppress and in not excluding the judicial identification of him by Ritter upon objection at the guilt stage of the trial. As argued, the contention is bottomed only upon the absence of counsel at the lineup, Jackson urging that a waiver, executed by him, of his right to the presence of counsel at the lineup, was ineffective. He makes no claim that there was a deprivation of due process in the particularized circumstances of this case.

It is patent that the lineup here was conducted before the initiation of an adversary judicial criminal proceeding. The record before us does not indicate that Jackson had been formally charged [4] or that a preliminary hearing had been held prior to the lineup. It shows that, at the time of the lineup, he had not been presented, he had not been arraigned, and neither an indictment nor an information had been filed against him. Even if the proceedings in the Juvenile Court be deemed "an adversary judicial criminal proceeding" within the contemplation of *Kirby*, which we expressly do not now decide,[5] such pro-

---

4. We note that we do not deem an "offense report" submitted by a police officer to be a "formal charge" within the contemplation of *Kirby*. And we observe that it is patent in *Kirby* that an "adversary judicial criminal proceeding" is not attained merely by the focusing of an investigation on an accused. In *Miranda v. Arizona, supra*, note 4 at 444, the Court said that when it spoke of "an investigation which had focused on an accused" in *Escobedo v. Illinois, supra*, it meant "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." This was the meaning of "custodial interrogation" as spelled out in *Miranda*. The focusing of an investigation on an accused invokes the right to counsel with respect to self-incrimination but not with respect to pretrial confrontations.

5. We point out, however, that the Juvenile Court had exclusive original jurisdiction over Jackson. Code, Art. 26, § 70-2; Code, Art. 27, § 12 and § 488. See Ch. 514, Acts 1972, effective 1 July 1972, codified as Art. 26, § 70-2 (d) (3). Juvenile proceedings are **not** criminal proceedings. *Matter of Nawrocki*, 15 Md. App. 252. No criminal proceedings against Jackson could in any event be

ceedings postdated the lineup. Therefore, Jackson had no constitutional right to the assistance of counsel at the lineup, and, as he was not entitled to counsel as of right, the absence of counsel did not violate the Sixth and Fourteenth Amendments.

We hold that the court below did not err in denying the pretrial motion to suppress the in-court identification evidence or in overruling the objection at trial to such evidence.

*Judgments affirmed.*

commenced until the Juvenile Court had waived its jurisdiction over him. He was not subject to criminal prosecution before the case was transferred to the criminal court as authorized by Code, Art. 26, § 70-16.